

**U.S. Department of Justice**

*United States Attorney's Office*
*District of Delaware*

| | |
|---|---|
| *1007 Orange Street, Suite 700* | |
| *P.O. Box 2046* | *(302) 573-6277* |
| *Wilmington, Delaware 19899-2046* | *FAX (302) 573-6220* |

April 2, 2007

**BY CM/ECF**

Honorable Sue L. Robinson
United States District Court
J. Caleb Boggs Federal Building
844 King Street
Wilmington, DE 19801

Re: *United States v. Wayne S. Williams*, Criminal Action No. 05-17-SLR

Dear Chief Judge Robinson:

Mr. Williams is scheduled for resentencing before the Court on April 3, 2007. This letter is presented in response to the defendant's sentencing memorandum requesting that he be sentenced to 120 months, the statutory minimum sentence for his crime of conviction, pursuant to 21 U.S.C. Sec. 841(b)(1)(A). Mr. Williams advisory range under the U.S. Sentencing Guidelines is 151-188 months. A guideline sentence is reasonable in this case.

### A. Post Arrest/Conviction Rehabilitation

Citing *United States v. Sally*, 116 F.3d 76 (3d Cir. 1997), Mr. Williams argues that his exceptional post arrest/conviction rehabilitation warrants a Guideline departure and/or a variance from the applicable guideline range. This Court may consider all of Mr. Williams's post arrest/conviction rehabilitative efforts in determining a reasonable sentence under 18 U.S.C. Sec. 3553(a). However, U.S.S.G. Section 5K2.19 (Policy Statement) limits this Court's ability to depart downward based on "post-sentencing rehabilitative efforts, even if exceptional, undertaken by a defendant after imposition of a term of imprisonment for the instant offense." *See United States v. Bockius*, 177 F. Supp.2d 353, 356 (E.D.Pa. 2001). As opposed to the Section 3553(a) variance also requested by the defendant, a downward departure based solely on post-sentencing rehabilitation is "not . . . appropriate." U.S.S.G. Section 5K2.19.

### B. Cocaine Base ("Crack" Cocaine)/Powder Cocaine Sentencing Disparity.

The Third Circuit in *United States v. Williams,* 201 Fed. Appx. 125, 2007 WL 2927348 at *2 (3rd Cir., October 13, 2006) reversed Mr. Williams initial sentence and held that this Court may consider the sentencing disparity between powder cocaine and cocaine base sentences when exercising its discretion to impose a reasonable sentence in light of all the factors set forth in 18 U.S.C. Sec. 3553(a). Accordingly, this Court may consider the nature of the applicable

**Letter to Honorable Sue L. Robinson**
**April 2, 2007**
**Page Two**

---

guidelines, along with all other pertinent factors in the case, in determining whether the final sentence should fall within or outside the advisory range. However, this Court should not reduce a sentence in any crack cocaine case, including this one, below the advisory guidelines applicable to crack cocaine, based only on a disagreement with the severity of punishment suggested by the guidelines for crack offenses. It would be unreasonable to impose a reduced sentence based solely on disagreement with the legislative determination regarding the necessary severity of sentencing for crack cocaine offenses.[1]

These conclusions flow directly from the Third Circuit's decision in *United States v. Gunter*, 462 F.3d 237 (3d Cir. 2006). The Third Circuit in *Gunter* did not advocate or encourage below-guideline sentences in all crack cocaine cases, nor did it give individual judges *carte blanche* authority to impose sentence based on each judge's personal view concerning the appropriate severity of crack penalties. A careful reading of the decision reveals just the opposite.

A central dispute in the present case rests on the structure of the Sentencing Guidelines, which apply a 100:1 ratio in comparing offenses involving powder cocaine and offenses involving crack cocaine. (The 100:1 ratio applies the same offense level to a quantity of powder cocaine that is 100 times greater than a quantity of crack cocaine which is subject to the same offense level. In practice, however, this does not result in crack sentences which are 100 times as long, but rather sentences that are approximately 1.6 times longer than the sentences for similar powder cocaine crimes. *Gunter*, 462 F.3d at 240 n.4.) As the decision in *Gunter* explained at length, this structure has long been the subject of criticism from many judges, academics, defense attorneys, and others, and on several occasions the Sentencing Commission has suggested adjusting it. Congress, however, has not accepted these recommendations and has insisted on continued application of the 100:1 ratio.

Following the decision in *United States v. Booker*, 543 U.S. 220 (2005), a number of district courts exercised their authority to impose sentences outside the advisory guideline ranges in crack cases, to address the disparate treatment of crack and powder offenses. This development has raised a number of questions: (1) May a district court alter the guideline range for crack offenses in a manner which the court deems more appropriate in relation to powder offenses? (2) If not, may the district court nevertheless exercise its authority under *Booker* to impose a sentence below the guideline range in a crack cocaine case? (3) If the court elects to

---

[1]    Importantly, as set forth above, Mr. Williams does *not* limit his request for a variance solely to the disparity between crack cocaine and powder cocaine sentences. While the government maintains that a Guideline sentence is reasonable in Mr. Williams' case, counsel acknowledges that the Court could, consistent with its discretion pursuant to Section 3553(a), sentence Mr. Williams to a lesser term of imprisonment equal to or greater than the statutory minimum term of 120 months, given the defendant's multiple bases for such variance.

impose a sentence within the unaltered advisory guideline range, is that sentence reasonable in light of the criticism of the 100:1 ratio? (4) Alternatively, if the court elects to impose a sentence below the guideline range, what factors may it consider, and what sentence is reasonable?

The decision in *Gunter* answers only the first three of these questions. It does not resolve the final question, but professes agreement with appellate courts which have addressed and provided important guidance regarding that issue.

The *Gunter* court focused most of all on the second question, whether *Booker* permits a below-guideline sentence in a crack case. The Court correctly explained its holding as "limited." *Gunter*, 462 F.3d at 247. It stated the question presented as follows: "whether it is legal error for a sentencing court to believe that it must follow the crack/powder differential in the Guidelines when imposing a sentence under the now-advisory Guidelines regime." *Id.* at 244. "[W]e decide a limited issue of first impression for our Court: whether the District Court erred as a matter of law in believing it could not sentence below the applicable Guidelines range for offenses involving crack cocaine." *Id.* at 247. The Court held that the district court in that case not only refused to adjust the advisory guideline range based on criticism of the 100:1 ratio, but in fact believed that it was required by law to impose a term of imprisonment no lower than the bottom of the crack guideline range. In other words, the Third Circuit concluded that the district court had treated the crack guideline range as mandatory, in plain violation of the Supreme Court's holding in *Booker* that the guidelines may only be applied as advisory. *See id.* at 239.

In the course of reaching the straightforward conclusion that the crack guidelines are not mandatory, the *Gunter* court also answered other critical questions. It stated that a district court is required, prior to determining the sentence, to calculate and consider the advisory guideline range, and in so doing it may not discard the suggested range or the 100:1 ratio in favor of some other formulation which the particular judges feels appropriate. The Court suggested its agreement with many other circuit courts which have held likewise, stating, "although the issue is not before us, we do not suggest (or even hint) that the Court categorically reject the 100:1 ratio and substitute its own, as this is verboten." *Id.* at 249.

The Court further held that, once the advisory range for a crack offense is determined, using the established guidelines, the district court is free to impose a sentence within that advisory guideline: "within-Guidelines crack cocaine sentences are not *per se* unreasonable simply due to the crack/powder cocaine differential." *Id.* at 245. *See also id.* at 249 ("Of course, the District Court is under no obligation to impose a sentence below the applicable Guidelines range solely on the basis of the crack/powder cocaine differential."). The Court's decision is thus plainly limited to the proposition that the crack guidelines are not mandatory, but rather are advisory. Given that, a district court in an appropriate case may consider the disparate nature of crack sentencing, along with other factors unique to the defendant, in determining whether to impose a sentence within or outside the advisory range.

This then raises the fundamental question whether a district court may impose a below-guideline sentence based solely on disagreement with the crack cocaine differential. The

Letter to Honorable Sue L. Robinson
April 2, 2007
Page Four

*Gunter* court went to lengths to explain that its ruling was not inconsistent with that of other courts regarding this topic, *see id.* at 246-47, and those appellate courts have unanimously ruled that a sentencing reduction based solely on rejection of the 100:1 ratio is impermissible.

This issue involves not the mandatory application of the guidelines, which is forbidden, but rather whether a final sentence is reasonable in light of all sentencing considerations outlined in 18 U.S.C. § 3553(a). In *Booker*, the Supreme Court explained that the guidelines are advisory, and must be taken into account along with all other factors set forth in 18 U.S.C. § 3553(a) in determining the final sentence. The Court further held that sentences will be reviewed for reasonableness. The question, then, is whether imposing a sentence below the guideline range (which is one of the 3553(a) factors) is reasonable where the only objection concerns a policy disagreement with Congress' and the Sentencing Commission's formulation of that range.

Appellate courts in a number of other circuits have unanimously reached the same conclusion: a court may take into account the nature of the offense, and the suggested penalties, when deciding whether the sentence proposed in the advisory range is reasonable, but acts unreasonably in sentencing outside that range based solely on a disagreement with Congress' policy choice. *See, e.g., United States v. Pho*, 433 F.3d 53 (1st Cir. 2006); *United States v. Eura*, 440 F.3d 625, 632-33 (4th Cir. 2006)(reversing a below-guideline sentence which rested solely on rejection of the 100:1 ratio — "By its plain language, § 3553(a)(6) seeks to bring about increased uniformity in the sentencing of similarly situated defendants. However, giving a sentencing court the authority to sentence a defendant based on its view of an appropriate ratio between crack cocaine and powder cocaine would inevitably result in an unwarranted disparity between similarly situated defendants in direct contradiction to the specific mandate of 18 U.S.C. § 3553(a)(6).")[2] *See also United States v. Castillo*, 460 F.3d 337, 361 (2d Cir. 2006) ("[W]e join the First, Fourth, and Eleventh Circuits in holding that district courts may give non-Guidelines sentences only because of case-specific applications of the § 3553(a) factors, not based on policy disagreements with the disparity that the Guidelines for crack and powder cocaine create."); *United States v. Jointer*, 457 F.3d 682 (7th Cir. 2006) (holding that a district court erred in imposing a reduced sentence based solely on disagreement with the 100:1 ratio, and not individual factors regarding the defendant's case); *United States v. Miller*, 450 F.3d 270, 275 (7th Cir. 2006); *United States v. Williams*, 456 F.3d 1353, 1366-67 (11th Cir. 2006) (observing that *Pho* and *Eura* "held that sentences must be based on individualized aspects of the defendant's

---

[2] The *Eura* court noted that "it does not follow that all defendants convicted of crack cocaine offenses must receive a sentence within the advisory sentencing range. We certainly envision instances in which some of the § 3553(a) factors will warrant a variance from the advisory sentencing range in a crack cocaine case. However, a sentencing court must identify the *individual* aspects of the *defendant's* case that fit within the factors listed in 18 U.S.C. § 3553(a) and, in reliance on those findings, impose a non-Guidelines sentence that is reasonable. Moreover, in arriving at a reasonable sentence, the court simply must not rely on a factor that would result in a sentencing disparity that totally is at odds with the will of Congress." *Id.* at 634 (emphasis in original).

Letter to Honorable Sue L. Robinson
April 2, 2007
Page Five

_____

case that fit within the § 3553(a) factors, and not on generalized disagreement with congressional sentencing policy," and concluding, "We agree with the First and Fourth Circuit's conclusions.").

In *Gunter*, the Third Circuit stated that its ruling was not inconsistent with these holdings. *Gunter*, 462 F.3d at 246-47. Most recently, the Eighth Circuit, sitting *en banc*, agreed with this interpretation of *Gunter*. There, in agreeing that a below-guidelines variance based solely on disagreement with the 100:1 ratio is impermissible, the 10-judge majority rejected the view of two dissenters that *Gunter* provided permission for rejection of the 100:1 ratio in any case: "We disagree, however, with the dissent's view that the *Gunter* court indicated 'it is entirely appropriate for a district court to consider a different ratio under step three of the sentencing process.' The *Gunter* court, in fact, reasoned just the opposite." *United States v. Spears*, 489 F.3d 1166, 1175 (8th Cir. 2006) (*en banc*). The Eighth Circuit joined all other circuits to address the issue in rejecting the reasonableness of a sentence resting solely on disagreement with Congress' policy choice. *Id.* at 1178.

Thus, the law is clear that, while the advisory crack guidelines may not be applied as mandatory, it is not reasonable to impose a reduced sentence based solely on the view that the suggested crack penalties are too onerous. Rather, a term should be reduced only where that is reasonable in light of all the circumstances of the case, including the nature of the suggested punishment as well as the individual characteristics of the defendant and the crimes. The concluding sentence in *Gunter* -- "The limited holding here is that district courts may consider the crack/powder cocaine differential in the Guidelines as a factor, but not a mandate, in the post-Booker sentencing process," *id.* at 249 -- rejects the mandatory application of the crack guidelines, and further permits this Court to consider the nature of the sentencing dichotomy when imposing sentence. It does not disturb the consensus of the appellate courts that it is unreasonable to reduce a sentence based only on disagreement with the policy decision expressed in the guidelines, as such an action would breed widespread and unjustified disparity in sentencing in crack cases.

Here, the government maintains that a Guidelines sentence is reasonable. Should the Court, in the exercise of its discretion, conclude that a variance is warranted, such variance should be based on consideration of all the Section 3553(a) factors in Mr. Williams' case.

Respectfully submitted,

COLM F. CONNOLLY
United States Attorney

BY: _____
Shannon Thee Hanson
Assistant United States Attorney

cc: Dr. Peter T. Dalleo (By CM/ECF)
Edson A. Bostic, Esq., FPD (By CM/ECF)
Margaret M. Bray, USPO (By Facsimile)